# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| RICHARD CAMPFIELD, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAFELITE GROUP, INC., et al.,<br><br>Defendants. | Case No. 2:15-cv-2733<br><br>Judge: Michael H. Watson<br><br>Magistrate: Chelsey M. Vascura |

### DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT RENE BEFURT PURSUANT TO FED. R. EVID. 401, 403, AND 702

Defendants Safelite Group, Inc., Safelite Solutions LLC, and Safelite Fulfillment, Inc. (collectively, "Safelite" or "Defendants") hereby move, pursuant to Federal Rules of Evidence 401, 403, and 702, as well as *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and other applicable cases, to exclude the expert opinions and testimony of Dr. Rene Befurt, Plaintiffs' proffered marketing and survey expert. As set forth in the attached Memorandum in Support, in reaching his opinions about Safelite's marketing and its effects on consumers, Dr. Befurt relied heavily on statements that this Court has already held are not actionable against Safelite under the Lanham Act—statements allegedly made in Safelite's role as a third-party claims administrator, including ones allegedly "ghostwritten" by Safelite for third-party insurance clients. This Court has twice held that such statements are not actionable against Safelite and dismissed them from the case.

Dr. Befurt's testimony should be excluded because its extensive reliance on non-actionable statements will confuse and mislead the finder of fact and unfairly prejudice Safelite by attributing third-party statements to Safelite and serving as a "back door" through which

Plaintiffs will attempt to continue litigating their twice-rejected legal theories.  Fed. R. Evid. R. 403, 702.  Dr. Befurt's opinions are also irrelevant and fail to "fit" the remaining issues in this case because the opinions are all based on the flawed assumption that the third-party, excluded statements are attributable to Safelite.  They are not, and, thus, Dr. Befurt's opinions will not "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 401, 702(a).

      Accordingly, all of Dr. Befurt's opinions and testimony must be excluded.  Safelite thus moves for an order excluding Dr. Befurt's expert opinions and testimony in their entirety.

**MEMORANDUM IN SUPPORT**

**I.      INTRODUCTION**

In two separate opinions, this Court has rejected Plaintiffs Richard Campfield's and Ultra Bond, Inc.'s (collectively, "Plaintiffs") attempts to hold Safelite liable for statements made in its role as a third-party claims administrator.  The Court has made clear that such third-party statements—including ones allegedly "ghostwritten" by Safelite for third-party insurance clients (collectively, the "excluded statements")—are not actionable under the Lanham Act and have been dismissed from the case.

Plaintiffs' proffered marketing and survey expert, Dr. Rene Befurt, relied extensively on these excluded statements to support *all* of his expert opinions.  Indeed, Dr. Befurt used excluded statements in two of the three market surveys he conducted, the results of which informed most of his expert opinions.  His remaining opinions, which did not rely on the surveys, nevertheless heavily relied on excluded statements.  At the heart of Dr. Befurt's expert analysis and resultant opinions rests an assumption that this Court has twice rejected as a matter of law: that the excluded statements are attributable to Safelite for the purposes of Plaintiffs' Lanham Act claim.

Because of his flawed assumption and extensive reliance on excluded statements, any probative value that Dr. Befurt's expert opinions may have is outweighed by the likelihood those opinions will mislead and/or confuse the trier of fact and unfairly prejudice Safelite.  Fed. R. Evid. 403, 702.  Furthermore, Dr. Befurt's opinions do not "fit" the issues in this case and will not "help the trier of fact to understand the evidence or to determine a fact in issue," because they are not based on statements that are at issue here.  Fed. R. Evid. 401, 702(a).  Consistent with *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), subsequent cases, and the Federal Rules of Evidence, Dr. Befurt's expert opinions must be excluded.

## II. PROCEDURAL BACKGROUND

Plaintiffs' original Complaint focused on Safelite's role as a third-party administrator ("TPA"). *See generally* Doc. No. 1, Complaint; *see id.* ¶ 2 (alleging, for example, that "Safelite's role as the nation's largest TPA gives it unique access to and control over customers of [vehicle glass repair and replacement] services"). Plaintiffs made only passing reference to statements Safelite allegedly made directly to consumers via its website. *See id.* ¶¶ 117–22. Plaintiffs' original focus on Safelite's role as a TPA was not surprising given that their claims in this case were essentially a repackaging of failed claims they filed against State Farm Mutual Automobile Insurance Company over a decade ago. *See Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111 (10th Cir. 2008) (affirming dismissal of all claims).

The Court granted Safelite's motion to dismiss Plaintiffs' original Complaint with respect to statements Safelite made in its role as a TPA, holding that such statements "do not qualify as commercial advertising or promotion." Doc. No. 36, Opinion & Order at 13. The Court permitted the case to proceed to discovery with respect to Safelite's alleged statements made directly to consumers on its website. *See id.* at 13–14, 16.

Notwithstanding the Court's Order, Plaintiffs proceeded to conduct extensive discovery related to Safelite's role as a TPA. Then, more than two years after they originally filed suit, Plaintiffs filed an Amended Complaint attempting to reintroduce and expand on everything the Court dismissed. *See generally* Doc. No. 60, Amend Complaint ("AC"). Plaintiffs once again alleged that Safelite falsely advertised in its role as an insurance TPA. *See* Doc. No. 63, Defendants' Motion to Dismiss ("Mot. to Dismiss") at 4–5 (discussing Amended Complaint allegations related to Safelite's role as a TPA). Plaintiffs added on allegations that Safelite falsely advertised when it "ghostwrote" materials used by third-party insurers. *See* AC ¶¶ 17, 106–13.)

Yet again, Safelite moved to dismiss Plaintiffs' claims related to statements Safelite allegedly made or wrote on behalf of third-party insurance companies. *See generally* Doc. No. 63, Defs.' Mot to Dismiss. And, yet again, this Court held that such statements are not actionable under the Lanham Act. Doc. No. 113, Opinion & Order ("Order") at 7–9, 11, 19. The Court found that (1) Safelite's "statements to policyholders in its role as a claims administrator are not commercial advertising or promotion under the Lanham Act," *id.* at 7; (2) it could not "reasonably infer that statements made in insurance company brochures and bulletins, even if drafted by Safelite, are actionable against Safelite under the Lanham Act," *id.* at 9; and (3) "statements regarding the dollar bill rule that Safelite Solutions made in its role as third-party claims administrator and statements that Safelite allegedly ghostwrote for insurance companies are not commercial advertising or promotion actionable against Safelite under the Lanham Act." *Id.* at 11. Accordingly, the Court once again dismissed Plaintiffs' claims based on these excluded statements. *Id.* at 19.

While Safelite's second Motion to Dismiss was still pending, Plaintiffs served the expert report of Rene Befurt, Ph.D, dated June 11, 2018 ("Befurt Report" or "Report"), Doc. 133-1. The Report examines "the role of the dollar bill rule in Safelite's marketing and promotional activities" and "assess[es] whether and to what extent these messages influence consumer behavior as it relates to the repair or replace[ment] of a cracked windshield." *See id.* ¶ 5.

Dr. Befurt designed and conducted consumer surveys using three different sets of "promotional materials" that were identified by Plaintiffs' counsel. *Id.* ¶ 9. Dr. Befurt described the goals of his surveys as two-fold: (1) to assess "how respondents exposed to examples of *Safelite's* allegedly false *statements* interpret them"; and (2) to assess "whether, and to what extent, the examples of *Safelite's* allegedly false and misleading *messages* influence consumers'

decisions as to whether to repair a windshield with a ten-inch crack" (as opposed to a six-inch crack). *Id.* (emphasis modified). Critically, two of the three consumer surveys Dr, Befurt conducted examined materials that included only third-parties, excluded statements taken from documents without Safelite branding or attribution. Befurt's first survey tested a flyer from Farmers Insurance Group. *See id.* ¶ 61.a (Stimuli Pair 1, entitled "Repair your windshield in about 30 minutes"). His third survey tested another flyer from Farm Bureau Insurance. *Id.* ¶ 61.c (Stimuli Pair 3, entitled "Handling vehicle glass damage"). Of Befurt's three surveys, only one tested a document with Safelite branding. *Id.* ¶ 61.b (Stimuli Pair 2, entitled "Improving your view: 'How to Perform a Proper Repair'").[1]

Based on the combined results of all three surveys, Dr. Befurt then formed several opinions about how consumers allegedly interpret *Safelite's* messaging. His opinions include:

1) "Safelite's tested promotional materials convey to a substantial number of consumers that [cracks] larger than six inches are not repairable." *Id.* ¶ 9.

2) "[W]hen faced with a purchase-like scenario, respondents who were exposed to the promotional materials containing allegedly false statements of the type identified by Plaintiffs were much less likely to repair (as opposed to replace) a ten-inch crack compared to respondents who were exposed to amended promotional materials, without the allegedly false and misleading messages." *Id.*

3) "Safelite's promotional materials communicate a rule, rather than a Safelite policy." *Id.* ¶ 10.

4) "The allegedly false messages have a causal impact on consumer behavior that is not tied to purchasing from Safelite or the promoting firm." *Id.*

---

[1] This document, referred to in Dr. Befurt's Report as "Stimulus 2," is discussed in Safelite's Motion for Summary Judgment. *See* Doc. No. 127 at Section V.A.3.b.i-ii & Doc. No. 127-4 Appendix A (Statement 1). As discussed there, even this document was not a statement aimed at consumers. Instead, it was a statement made to insurer business customer, AAA, in the context of Safelite's contractual relationship with this client. *Id.* As such, this statement also is not actionable against Safelite. Thus, Dr. Befurt failed to test *any* actionable statement made to the relevant market at issue in this action—vehicle owners or repair shops—further supporting the instant motion. *See id.*

Dr. Befurt's remaining opinions derive from his own examination of materials produced in the case, rather than consumer surveys. But these opinions still rely extensively on third-party, excluded statements. *See, e.g., id.* ¶ 19 & Befurt Report Ex. 1 (Ex. 1) (referring to "Third Party Materials"). Dr. Befurt's remaining opinions include the following:

1) "Safelite's dollar bill rule . . . has served as a critical component of Safelite's marketing program, and has been prominently and consistently featured through a number of means across a range of various promotional media formats over the course of many years." Doc. 133-1 ¶ 8.

2) "Safelite's use of the dollar bill rule is consistent with a strategy of attempting to both (1) convert potential Safelite repair customers into Safelite replacement customers, and (2) generally raise awareness and recall among car owners and users that windshield damage can be addressed through windshield repair, with certain limits that are communicated to consumers via the dollar bill rule. If these limits are not met, Safelite's communications point out that windshield replacement is both available and necessary." *Id.*

Finally, Dr. Befurt's conclusion that "Safelite's promotional materials communicate a rule, rather than a Safelite policy" *id.* ¶ 10, is based on both his survey results and his own "review of the promotional materials." *Id.*

Defendants' expert, Kent Van Liere, Ph.D, provided a report in response dated August 12, 2018, refuting each and every survey and opinion offered by Dr. Befurt, with particular criticism levied at the design of Dr. Befurt's surveys. In turn, Dr. Befurt provided a rebuttal report on September 25, 2018 ("Rebuttal Report") (Ex. 2). In his Rebuttal Report, Dr. Befurt continued to rely, in part, on the same excluded statements cited in his first Report. Defendants deposed Dr. Befurt on October 25, 2018, and during his deposition, Dr. Befurt continued to rely upon and offer opinions pertaining to excluded, third-party statements. *See generally* Doc. 137-7.

### III. ARGUMENT

The Court should exclude Dr. Befurt's expert opinions and testimony because they rely heavily on statements this Court has already excluded from this matter—statements Safelite made in its role as a third-party claims administrator or that Safelite allegedly "ghostwrote" for insurance companies. Because these statements are not actionable against Safelite, Dr. Befurt's opinions and testimony relying on them would only serve to mislead and confuse the trier of fact, suggesting that Safelite is responsible for every third-party statement related to the dollar bill rule when, in fact, as Plaintiffs themselves admit, the rule is used by virtually everyone in the industry and dates back to the 1970s. Doc. 1, Complaint ¶ 66. Additionally, given this Court's holding that Safelite is not liable for excluded statements, Dr. Befurt's opinions and testimony about such statements are irrelevant and will not help the trier of fact to understand the evidence or determine facts in issue in the case. Separately or in concert, these flaws require this Court to exclude Dr. Befurt's misleading, confusing, and irrelevant opinions under the Federal Rules of Evidence and standards outlined in *Daubert*, 509 U.S. 579 (1993), and subsequent cases.

### A. All of Dr. Befurt's opinions rely in substantial part on excluded statements.

The primary support for the majority of Dr. Befurt's opinions is a set of three consumer surveys he designed and conducted. *See* Doc. 133-1 at 4–5, 50–52. Only one used a promotional message, or "stimulus," that purported to be a Safelite communication. *Id.* ¶ 61.b (Stimuli Pair 2). The other two surveys used flyers that do not mention Safelite at all, but instead expressly state they are from Farmers Insurance Group and Farm Bureau Insurance, respectively. *See id.* ¶¶ 61.a, 61.c (Stimuli Pairs 1 and 3). It is indisputable that these third-party messages fit squarely within the excluded statements that the Court has dismissed as not actionable against Safelite. The Court expressly found that (1) "statements made in insurance company brochures and bulletins, even if drafted by Safelite, are [not] actionable against Safelite under the Lanham

Act"; and (2) "statements that Safelite allegedly ghostwrote for insurance companies are not commercial advertising or promotion actionable against Safelite under the Lanham Act."  Order at 9, 11.  The two third-party materials used in the customer survey have no Safelite branding and do not purport to be from Safelite.  *See* Doc. 133-1 ¶¶ 61.a, 61.c.  Indeed, Dr. Befurt in his Report expressly describes the advertisement selected in Stimulus 1 as "Third-Party Materials."  *See* Ex. 1 (listing the Farmers Insurance Group advertisement from Stimuli Pair 1, SL0081019–020, Doc. 131-11, as "Third Party Materials").  These statements are not actionable.

Dr. Befurt also relied on other excluded statements to support his opinions.  Dr. Befurt used Exhibit 1 to his report to summarize and provide examples of the "at-issue false and misleading messages" he examined.  *See* Doc. 133-1 ¶ 19 & Ex. 1.  Exhibit 1, in turn, refers to a number of statements made in "Third Party Materials," including a "Glass Bulletin" from insurance company Progressive and fliers from Farmers Insurance Group.  *See* Ex. 1 (citing SL0084917-918, Doc. 131-8; SL0000227;[2] SL0008035, Doc. 131-10; SL0005375-415;[3] SL0080962;[4] SL0081019–020, Doc. 131-11; SL0080650–659, Doc. 131-3).  Similarly, Dr. Befurt's Rebuttal Report refers to statements in documents published by the companies ERIEGlass, Progressive, and Farmers.  Ex. 2 at 39–40 (citing SL0008035, Doc. 131-10; SL0080962;[4] SL0081019–020, Doc. 131-11).  Dr. Befurt admitted numerous times in his

---

[2] SL0000227 is identical to SL0000166-168, Doc. 131-2, in Appendix B to Defendants' Motion for Summary Judgment.  *See* Doc. 127-3.  For reference SL0000227 is attached to the instant Motion as Exhibit 3.

[3] SL0005375-415 is materially identical to SL0005294-333, Doc. 127-9, in Appendix A to Defendants' Motion for Summary Judgment.  *See* Doc. 127-2.  For reference SL0005375-415 is attached to the instant Motion as Exhibit 4.

[4] SL0080962 is identical to SL0080845-850, Doc. 131-1, in Appendix B to Defendants' Motion for Summary Judgment.  *See* Doc. 127-3.  For reference SL0080962 is attached to the instant Motion as Exhibit 5.

deposition that the messages he analyzed included ones that were delivered via third-party insurers. *See, e.g.*, Doc. 137-7 at 95:18–20 (discussing statements "addressed to consumer, whether this is via insurance agents or Safelite personnel"); *id.* at 112:17–113:1 (discussing how Safelite communicates "indirectly via other parties, including insurances"). Dr. Befurt also admitted that his studies did not consider the context in which a customer received the messages—for example whether the message was communicated in the context of an insurer-insured relationship. *See id.* at 134:4–141:25. Again, there is no question that these statements are of the type previously excluded by this Court.

> **B. Given his reliance on excluded statements, Dr. Befurt's testimony should be excluded because it risks confusing and misleading the factfinder and unfairly prejudicing Safelite.**

Expert testimony, like any other evidence, may be excluded if its probative value is outweighed by the danger of confusing the issues, misleading the jury, or unfairly prejudicing a party. Fed. R. Evid. 403. Indeed, "Rule 702 provides more power than Rule 403 to exclude evidence where its dangers are balanced against benefits." Charles Alan Wright, *et al.*, 29 Fed. Prac. & Proc. Evid. § 6263 (2d ed.)); Fed. R. Evid. 702(a).

This Court has exercised its power under Rule 702 to exclude expert testimony that substantially relied on facts that were not actionable under a plaintiff's legal theories, reasoning that such testimony was likely to confuse and mislead the jury. *Neely v. Miller Brewing Company*, 246 F. Supp. 2d 866, 872–73 (S.D. Ohio 2003). In *Neely*, the plaintiff brought employment discrimination claims based on race and gender discrimination, but she abandoned her gender discrimination claim prior to trial. *Id.* at 867–68. Plaintiff's expert opined that Plaintiff suffered post-traumatic stress disorder (PTSD) as a result of several events that occurred at work, including "being subjected to having her buttocks and breasts squeezed . . . by someone in authority." *Id.* at 869. The District Court excluded the expert's testimony pursuant to Rule

702 because her opinion was "clearly based . . . in substantial part, upon events that [were] not actionable." *Id.* at 871–73. The Court reasoned that the expert's opinion would "cause[] the jury to be confused and misled" because it assumed that the incidents of sex discrimination, which served as a basis for the PTSD diagnosis, were relevant to Plaintiff's claims when, in fact, they were not. *Id.* at 873; *see also id.* at 871 (noting that the expert's opinion about PTSD was based on four events, "only two of which will be in evidence").

Dr. Befurt's opinions, like the expert's opinions in *Neely*, are "clearly based . . . in substantial part, upon [statements] that are not actionable." *Id.* at 872. And, like the expert in *Neely*, Dr. Befurt's opinions and testimony should be excluded. Dr. Befurt's opinion that "Safelite's promotional materials communicate a rule, rather than a Safelite policy," Doc. 133-1 ¶ 10, is emblematic of the flaws in his approach. This opinion is based both on Dr. Befurt's survey results and his own "review of the promotional materials." *Id.* Both sources are heavily saturated with excluded statements that this Court has already held are not attributable to Safelite. And yet, from these third-party statements, Dr. Befurt draws the conclusion that consumers could not read a Safelite statement about the dollar bill rule as conveying Safelite's policy. *Id.* That approach defies logic.

Indeed, Dr. Befurt himself identifies this hole in his logic: He concludes that "consumers could not possibly interpret the promotional materials [that are issued by third parties] as a Safelite-specific policy [precisely] *because* Safelite's brand or trademark does not appear in the promotional materials—even though Safelite may have prepared for the third party or supported a third party to prepare the materials." Doc. 133-1 ¶ 33 (emphasis added); *accord* ¶¶ 37–38 (citing materials from Farm Bureau Insurance of Idaho, Alfa Glass, and Farmers, and their lack of a Safelite brand or trademark, as evidence of Dr. Befurt's conclusion that the promotional

materials "are . . . not interpretable as a Safelite-specific policy"). But of course consumers could not because these examples are not Safelite's speech, as this Court has already found.

The reasoning of *Neely* applies on all fours to the issue here. Dr. Befurt's extensive reliance on excluded statements that are irrelevant to the legal issues in this case will suggest to the finder of fact that those excluded statements are properly actionable. This Court has held precisely the opposite. As a result, Dr. Befurt's opinions and testimony will not "help the trier of fact to understand the evidence or to determine a fact in issue," but only serve to confuse and mislead. Fed. R. Evid. 702(a); Fed. R. Evid. 403; 29 Fed. Prac. & Proc. Evid. § 6263.

Dr. Befurt's testimony should also be excluded because it is unfairly prejudicial to Safelite. If allowed to present his opinions, Dr. Befurt's testimony will serve as a "back door" through which Plaintiffs will attempt to continue litigating rejected legal theories, putting statements this Court has dismissed in front of the trier of fact and attributing those statements to Safelite. The only way for Safelite to explain the flaws in Dr. Befurt's analysis would be to further underscore the very statements that the Court has excluded. Doing so would be unfairly prejudicial to Safelite, creating the impression that Safelite is to blame for the insurance industry statements, when this Court has concluded precisely the opposite. *Cf. Neely*, 246 F. Supp. 2d at 872–73 (rejecting this approach for similar reasons); *see also United States v. Gallion*, 257 F.R.D. 141, 153–54 (E.D. Ky. 2009) (excluding defendant's expert's testimony as misleading pursuant to Rule 403 because the expert opined that defendants were entitled to rely in good faith on a judge's order, but the judge's order was based on inaccurate or incomplete disclosures made by defendants), *aff'd sub nom. United States v. Cunningham*, 679 F.3d 355 (6th Cir. 2012).

These reasons alone mandate that Dr. Befurt be excluded. But there are additional reasons to exclude his opinions and testimony, as set forth below.

      **C.      Because Dr. Befurt relied on statements that are no longer actionable, his testimony should be excluded as irrelevant as it does not "fit" the remaining issues in the case.**

Expert testimony is admissible only if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "This condition goes primarily to relevance. "'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'" *Daubert*, 509 U.S. at 591 (quoting 3 Weinstein & Berger ¶ 702[02], p. 702–18). One aspect of relevancy "is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.* (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)). "The consideration has been aptly described . . . as one of 'fit.'" *Id.* "'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." *Id.*

In order for the scientific testimony to "fit" the case, "there must be a connection between the scientific research or test result being offered and the *disputed* factual issues in the case . . . ." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (emphasis added) (citing *Daubert*, 509 U.S. at 592). "Clearly, expert testimony does not 'help' if it is unrelated to the facts at issue or is based on factual assumptions that are not supported by the evidence." 29 Fed. Prac. & Proc. Evid. § 6265.2. Similarly, expert opinions that are "contrary to this Court's rulings are irrelevant" and are appropriately excluded. *Thomas & Marker Constr. Co. v. Wal-Mart Stores, Inc.*, 2008 WL 5119587, at *7 (S.D. Ohio Nov. 30, 2008). The party proffering the expert bears the burden to demonstrate, "by a 'preponderance of proof,' that the expert whose testimony is being offered . . . will assist the trier of fact in understanding and disposing of issues relevant to the case." *Pride*, 218 F.3d at 578 (quoting *Daubert*, 509 U.S. at 592 n.10).

Applying these principles, Courts routinely exclude expert testimony, even from credentialed experts, when the opinions offered do not "fit" the issues to be determined in the

case. For example, in *Lees v. Carthage College*, a college student sued her college for negligently failing to protect her after she was attacked and sexually assaulted by two unknown men in her dorm room. 714 F.3d 516, 518–19 (7th Cir. 2013). The Seventh Circuit affirmed the district court's decision to exclude certain testimony from plaintiff's premises-security expert, who offered (i) an opinion that the attack on plaintiff was foreseeable, and (ii) "an opinion as to what specific security measures would have been reasonable under the circumstances." *Id.* at 520, 526. In reaching his opinions, the expert analyzed the "history of sexual assault" at plaintiff's college, including several instances of "acquaintance rape," while the assault against plaintiff was a "stranger rape." *Id.* at 518, 520. "The [district] court reasoned that a school would need to take different measures to prevent acquaintance rape than to prevent stranger rape," and thus excluded aspects of the expert's testimony that relied on analyses of acquaintance rape. *Id.* at 520. In other words, the facts on which the expert relied did not "fit" the case. The Seventh Circuit affirmed: "Relying on these crime statistics without accounting for this distinction does not reflect the application of reliable principles and data to the facts of this case." *Id.* at 526. The Sixth Circuit has ruled similarly. *See Decker v. GE Healthcare Inc.*, 770 F.3d 378, 394 (6th Cir. 2014) (affirming exclusion of expert in product liability suit where expert relied on data that was not "relevant to [defendants'] ability to foresee the risk," because the study in question post-dated the events that led to the lawsuit).[5]

---

[5] *See also, e.g., Lawrey v. Good Samaritan Hospital*, 751 F.3d 947, 948–50, 953 (8th Cir. 2014) (affirming district court decision excluding expert in medical malpractice suit who was proffered to testify about prevalence of injuries similar to plaintiff's that result from physician-applied traction during childbirth, where facts of the case indicated no traction was applied during plaintiff's birth); *Chavez v. Carranza*, 559 F.3d 486, 498 (6th Cir. 2009) (affirming decision excluding as irrelevant expert opinions on "the purposes behind the Salvadoran Amnesty Law" where the court declined as a matter of law to grant comity to that law); *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1323 (11th Cir. 2003) (affirming district court decision excluding expert's testimony in antitrust class action alleging price fixing conspiracy where the

Expert opinions relying on consumer surveys—like the ones at issue in this case—also have been rejected when they do not "fit" relevant issues to be determined by the fact-finder. In *Federal Trade Commission v. Ross*, for example, the Fourth Circuit Court of Appeals affirmed a district court's decision excluding a marketing expert's opinions that "advertisements linkable to [defendant] were nondeceptive,'" because the Court had already entered summary judgment in favor of the FTC holding that the advertisements were deceptive. 743 F.3d 886, 893 (4th Cir. 2014) (citing Fed. R. Evid. 401); *see also Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 325 F. Supp. 2d 841, 850 (M.D. Tenn. 2004) (excluding expert's opinions and testimony, based on "market research surveys," because they "[did] not 'fit' the issue before the Court and [were] irrelevant" to the issues for trial).

Like the expert testimony at issue in these cases, Dr. Befurt's opinions and testimony are inadmissible because they do not "fit" the remaining issues to be determined by the finder of fact. Dr. Befurt's consumer survey-based opinions are based primarily on statements that are "not . . . actionable against Safelite" under the Court's prior opinions. Because the excluded statements are "not . . . actionable against Safelite," opinions about how consumers interpret them are wholly irrelevant. Nor could surveys based on the excluded statements actually accomplish Dr. Befurt's stated goals—to assess how respondents interpret *Safelite's* promotional materials and the impact of *Safelite's* messaging on consumer decision-making, *see* Doc. 133-1 ¶ 9—because, as this Court has already held, excluded statements cannot be attributed to Safelite. Dr. Befurt's surveys and his resultant opinions do not "fit" the issues in this case, which

---

expert improperly defined illegal collusion and thus failed to differentiate between legal and illegal pricing behavior); *Thomas & Marker*, 2008 WL 5119587, at *7, 11–12 (excluding plaintiff's expert's opinions relying on a "soil borings report" that was irrelevant to the issues in the case; holding that opinions that were "contrary to this Court's rulings are irrelevant and will be excluded").

involves only Safelite's own messaging. Like the experts' opinions in *Ross* and *Gibson Guitar*, Dr. Befurt's opinions relate only to legal theories that the Court has rejected as a matter of law. Similarly, like the experts in *Lees* and *Decker*, Dr. Befurt relied on irrelevant materials to support his conclusions, rendering those conclusions a poor fit for this case.

Dr. Befurt's remaining opinions (the ones that do not rely on consumer surveys) are similarly flawed. His opinions all rely on a fundamental assumption that is erroneous as a matter of law: that the excluded statements of third-parties are attributable to Safelite. That assumption permeates his analysis and each of his conclusions. Because that assumption is incorrect, like the expert opinions in *Lees* and *Decker*, Dr. Befurt's opinions will not "assist" the judge or factfinder in "disposing of issues relevant to the case," Fed. R. Evid. 702(a), and they should be excluded.

## IV. CONCLUSION

For the reasons discussed above, the Court should grant Defendants' motion and exclude Dr. Befurt's testimony.

Dated:  August 30, 2019

Respectfully submitted,

*s/ Matthew A. Kairis*
Matthew A. Kairis (Ohio Bar #0055502)
*Trial Counsel*
Tiffany D. Lipscomb-Jackson (Ohio Bar #0084382)
Kenneth M. Grose (Ohio Bar #0084305)
Shalini B. Goyal (Ohio Bar #0096743)
*(admitted pro hac vice)*
Daniel W. Berens (Ohio Bar #0097193)
E-mail:  makairis@jonesday.com,
kmgrose@jonesday.com,
tdlipscombjackson@jonesday.com,
sgoyal@jonesday.com
dberens@jonesday.com
Jones Day
325 John H. McConnell Blvd., Suite 600
Columbus, OH  43215-2673
Telephone:     (614) 281-3605
Facsimile:      (614) 461-4198

John E. Iole (Pennsylvania Bar #47768)
E-mail:  jeiole@jonesday.com
Jones Day
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Telephone:     (412) 391-3939
Facsimile:      (412) 394-7959
*(admitted pro hac vice)*

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 30, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel for Plaintiffs

*s/ Matthew A. Kairis*
*One of the Attorneys for Defendants*