IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RICHARD CAMPFIELD, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAFELITE GROUP, INC., et al.,<br><br>Defendants. | Case No. 2:15-cv-2733<br><br>Judge: Michael H. Watson<br><br>Magistrate: Chelsey M. Vascura |

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
### TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT RENE BEFURT

In its Opinion and Order on Safelite's[1] motion to dismiss Plaintiffs' Amended Complaint, this Court held that "statements regarding the dollar bill rule that Safelite Solutions made in its role as a third-party claims administrator and statements that Safelite allegedly ghostwrote for insurance companies are not commercial advertising or promotion actionable against Safelite under the Lanham Act." Doc. 113, Opinion & Order at 11 (March 28, 2019).

Plaintiffs' marketing and survey expert, Dr. Rene Befurt, ignored the Court's holding and assumed that these third-party promotional materials are attributable to and actionable against Safelite. *See, e.g.,* Doc. 153-1, Befurt Report ¶ 33 ("Safelite has employed a holistic campaign with promotional materials appearing consistently across several different communication media, including . . . third party materials developed by Safelite."); *see also id.* at Ex. 1 (PageID 17963-64) (citing "Third Party Materials"). Dr. Befurt's reliance on insurance company brochures and pamphlets and his attribution of these non-actionable statements to Safelite is not a run-of-the-mill example of an expert reasonably relying on inadmissible facts. Rather, Dr. Befurt's analysis

---

[1] Defendants Safelite Group, Inc., Safelite Solutions LLC, and Safelite Fulfillment, Inc. will be referred to collectively as "Safelite" or "Defendants."

-1-

reflects a fundamentally flawed logic and an assumption that has already been rejected by this Court as a matter of law: that Safelite is responsible for the entire insurance industry's advertising and promotional statements.

Dr. Befurt's attribution of non-actionable, third-party statements to Safelite renders his opinions confusing, misleading, and irrelevant. His opinions do not "fit" the facts and law of this case, and his testimony should be excluded.

I.  **ARGUMENT**

**A. Plaintiffs And Their Expert Ignore The Law Of The Case, Injecting Irrelevant Opinions And Inadmissible Facts That Are Likely To Confuse And Mislead The Jury.**

Plaintiffs' attempt to spin and artificially limit the scope of the Court's prior orders should be rejected. *See* Doc. 153 at 2. In its Opinion and Order on Safelite's motion to dismiss Plaintiffs' Amended Complaint, this Court stated that—even accepting as true all of Plaintiffs' well-pled factual allegations—"the Court cannot reasonably infer that statements made in insurance company brochures and bulletins, even if drafted by Safelite, are actionable against Safelite under the Lanham Act." Doc. 113 at 9. The Court reasoned, in part, that "[s]ome of the insurance company brochures and bulletins do not even mention Safelite, and none of them represent to the reader that they are Safelite's own brochures or bulletins." *Id.* (internal citation omitted). Thus, the Court held that "statements regarding the dollar bill rule that Safelite Solutions made in its role as a third-party claims administrator and statements that Safelite allegedly ghostwrote for insurance companies are not commercial advertising or promotion actionable against Safelite under the Lanham Act." *Id.* at 11.

Dr. Befurt's analysis ignores the law of the case and turns the Court's logic on its head. Rather than disregarding the materials that the Court held are "not commercial advertising or promotion actionable against Safelite under the Lanham Act," *id.*, Dr. Befurt's entire analysis

-2-

attributes those materials directly to Safelite, even referring to them as "Safelite's promotional materials." *See, e.g.,* Doc. 153-1, Befurt Report ¶¶ 10, 33, 37-38. This flawed attribution of third-party, excluded statements to Safelite permeates Dr. Befurt's analysis and conclusions. Because of this, and for the reasons already articulated in Safelite's Motion, Dr. Befurt's opinions do not "fit" the facts and law of this case, and his testimony must be excluded. *See generally* Doc. 139, Memorandum in Support of Safelite Motion.

Plaintiffs argue that Dr. Befurt may rely on insurance company brochures and pamphlets—even if they are not actionable against Safelite—because they contain examples of "at issue" messages. *See* Doc. 153 at 10-12. But Dr. Befurt did not simply rely on the wording contained in the insurance brochures and pamphlets as examples of "at-issue messaging," as Plaintiffs argue.[2] *Id.* Rather, in forming his expert opinions, Dr. Befurt *attributed to Safelite* the non-actionable third-party statements, in direct contradiction to the law of the case.

Most notably, Dr. Befurt's opinion that "Safelite's promotional materials communicate a rule, rather than a Safelite policy," is *directly premised on the attribution of non-actionable, third-party statements to Safelite*. Doc. 153-1, Befurt Report ¶¶ 10, 31, 37-38. Dr. Befurt's report reasons: "consumers could not possibly interpret the promotional materials as a Safelite-specific policy *because* Safelite's brand or trademark does not appear in the promotional materials—even though Safelite may have prepared for the third party or supported a third party to prepare the materials." *Id.* ¶ 33 (emphasis added); *see also id.* ¶ 38. The Report goes on to list several specific third-party, non-actionable statements as "[e]xamples of *Safelite's promotional*

---

[2] Contrary to Plaintiffs' assertions about how the survey stimuli were selected, Dr. Befurt testified in his deposition that Plaintiffs' counsel identified the survey stimuli based primarily on Dr. Befurt's criteria that the messages were "widely disseminated," resulting in the selection of the two "test advertisements or pamphlets" that were "sent by insurances." Doc. 154-5 21:7-22:1 (PageID 18948-49).

*materials*," which Dr. Befurt attributed to Safelite to inform his opinion that "*Safelite's* promotional materials communicate a rule, rather than a policy." *Id.* ¶¶ 37-38 (emphasis added).

Dr. Befurt's other opinions were similarly informed by his assumption that non-actionable, third-party statements are attributable to Safelite. Dr. Befurt's report relies on the non-actionable materials to conclude that "the dollar bill rule has been an integral part of *Safelite's* marketing program." *Id.* § V.B & ¶¶ 30-31 (emphasis added). Underscoring this point, Dr. Befurt testified in his deposition that the goal of his expert analysis was "in the big picture, . . . to do market research and learn about consumers when they are confronted with *Safelite's* advertisement materials," including "the messages, the advertising messages that have been conveyed through ads, *through insurance agents, through pamphlets that insurance has sent out to consumers*." Doc. 154-5, Befurt Dep. 20:13-25 (emphasis added) (PageID 18948).

While it is true that "Rule 703 permits expert witnesses to offer opinions based on inadmissible facts or data," those facts and data nevertheless must be relevant to the opinion at issue and of the type that "'experts in the particular field would reasonably rely on . . . in forming an opinion on the subject'" Doc. 153 at 11-12 (quoting *Deere & Co. v. FIMCO Inc.*, 239 F. Supp. 3d 964, 977 (W.D. Ky. 2017)). Thus, when framed properly, the Court must ask whether Dr. Befurt reasonably relied on relevant facts when he examined excluded third-party statements to determine whether *Safelite* promoted the "dollar-bill" statement as a policy or a rule.

The answer is clear: Dr. Befurt's reliance on the non-actionable third-party statements is not reasonable. Dr. Befurt's opinions are admittedly based on the flawed conclusion that insurance company statements are attributable to Safelite, a conclusion the Court has already rejected as a matter of law. Quite simply, it is unreasonable given the Court's Order for Dr. Befurt to equate these third-party statements to "Safelite's promotional materials." And, given

that Dr. Befurt's analysis speaks to Plaintiffs' legal theories that are no longer at issue and makes use of irrelevant and inadmissible third-party statements, Dr. Befurt's analysis is likely to confuse and mislead the jury. The Court should exclude Dr. Befurt's expert opinions because they substantially rely on facts that are not relevant to the legal theories still before the Court, are likely to confuse and mislead the jury, and do not "fit" the facts and law of this case. *See* Doc. 139 at 6-14 and cases cited therein.

        **B.     Plaintiffs' Case Law Is Inapposite And Does Not Save Dr. Befurt's Opinions.**

The cases Plaintiffs cite in their Opposition do not save Dr. Befurt's opinions. Plaintiffs rely primarily on *Schechner v. Whirlpool Corporation*, 2018 WL 6843305, at *10 (E.D. Mich. 2018), for the proposition that experts are not required to use "only actual market advertisements." *See* Doc. 153 at 11. Plaintiffs argue that, in fact, "courts have allowed experts to go further [] even approving surveys where the entire product was an expert-created fiction." *Id.*

But *Schechner* involved no such circumstances, nor it is at all similar to the instant case. There, plaintiffs alleged that they were misled by Whirlpool's deceptive advertising of certain ovens as "'self-cleaning,' when in reality they were merely partially self-cleaning." *Id.* at *2. Defendant Whirlpool proffered a marketing expert who prepared a survey using a real Home Depot advertisement for the Whirlpool oven at issue but modified a single word—inserting the word "AquaLift" (the brand name for the Whirlpool technology at issue) before the word "self-cleaning." *Id.* at *10. Plaintiffs argued that the survey must be excluded because "the altered Home Depot advertisement was a deviation from marketplace reality, rendering opinions based on that survey data unreliable." *Id.* The *Schechner* court denied the plaintiffs' motion to exclude Whirlpool's marketing expert, holding that the advertisement used in the surveys "approximat[ed] marketplace reality." *Id.*

Similarly, *Rocky Brands* (the only other false or misleading advertising case Plaintiffs cite) involved a survey that asked participants to examine *defendants' actual product*—a Red Wing boot. *Rocky Brands, Inc. v. Red Wing Shoe Co., Inc.*, 2009 WL 5125475, at *2 (S.D. Ohio 2009). Again, the language on defendant's own boot label was modified slightly for one set of survey respondents, truncating the phrase "made in the USA with imported materials" to read simply "made in the USA" in order to determine whether defendant's labeling was misleading. *Id.* at *2. The court held that this survey using *defendant's own statements on its own label*, which defendant used on 10-15% of its products, was relevant and adequately approximated marketplace reality. *Id.* at *4-5.

Dr. Befurt's survey is materially different in several ways from the ones approved in *Schechner* and *Rocky Brands*. First, Dr. Befurt selected as stimuli third-party brochures that make no reference whatsoever to Safelite's products or services. This is a critical fact that distinguishes the surveys at issue in *Schechner* and *Rocky Brands*. Second, the surveys at issue in *Schechner* and *Rocky Brands* did not test legal theories or advertisements the court had already rejected as a matter of law, as Dr. Befurt's did. Third, unlike the *Schechner* and *Rocky Brands* surveys, there is no evidence that the survey stimuli used by Dr. Befurt "approximate[] marketplace reality." To the contrary, as is outlined in Safelite's briefing on the parties' motions for summary judgment, there is no evidence that Safelite published promotional materials substantially similar to Dr. Befurt's Stimuli 1 and 3 in a manner that would be actionable under the Lanham Act. For example, neither stimulus includes any Safelite-specific branding as neither is Safelite's material; instead, the stimuli include only the branding for and language of the insurance client for whom Safelite presumably ghostwrote the materials. *See* Doc. 153-1, Befurt Report at ¶ 61, pp. 35-36, 39-41.

Just as importantly, the expert opinions at issue in *Schechner* and *Rocky Brands* did not present the same substantial risks of confusing and misleading the jury that are at issue here. Unlike those cases, this case involves a standard (the "dollar bill rule") that Plaintiffs admit has been used by an entire industry for decades. Doc. 1, Compl. ¶ 66. Throughout this case, Plaintiffs have attempted to paint Safelite as the primary party responsible for the industry's adoption of that standard. *See, e.g., id.* ¶ 2 (alleging, for example, that "Safelite's role as the nation's largest TPA gives it unique access to and control over customers of [vehicle glass repair and replacement] services"). Plaintiffs have alleged that Safelite influenced the entire insurance industry in its role as a TPA and through materials that Safelite allegedly "ghostwrote" or prepared on behalf of its insurance clients. *See, e.g., id.*; Doc. 60, Am. Compl. ¶¶ 2, 17, 106-13. Dr. Befurt's reliance on non-actionable insurance company brochures and pamphlets perpetuates and underscores this narrative that Plaintiffs have refused to forgo, despite two Orders from this Court rejecting Plaintiffs' legal theories. Doc. 113 at 11; Doc. 36, Opinion & Order at 13, 16 (Sept. 30, 2016). Plaintiffs will undoubtedly continue this narrative into trial. If Dr. Befurt is permitted to present his expert opinions, there is a substantial likelihood that the jury will be misled and confused by Dr. Befurt's surveys and opinions, which purport to draw conclusions about *Safelite's* advertisements based on *third-party insurance company's* brochures and pamphlets—materials that the Court has held are not actionable against Safelite.

Plaintiffs' other case law is also inapposite. *Deere & Company v. FIMCO Inc.* stands for the unremarkable proposition that a survey expert may rely on survey participants' answers to survey questions, even though the survey responses are inadmissible hearsay. 239 F. Supp. 3d 964, 977-78 (W.D. Ky. 2017). *Innovation Ventures*, which Plaintiffs' Opposition relegates to a footnote, did not even involve a *Daubert* challenge. *See generally Innovation Ventures, LLC v.*

*N2G Distrib., Inc.*, 763 F.3d 524, 539-42 (6th Cir. 2014) (discussing evidentiary rulings the parties appealed, none related to the admission of expert testimony). Plaintiffs misstate the holding of that case, citing a portion of the opinion discussing the adequacy of the evidence to support the jury's verdict. While the cited excerpt refers to expert testimony, the Court of Appeals did not consider the admissibility or reliability of the experts' opinions. *Compare id.* at 535, *with* Doc. 153 at 11, n.8 (citing the same for the proposition that "[t]he Sixth Circuit Court of Appeals has held that experts are not limited to materials in the case when developing surveys"). Like *Schechner* and *Rocky Brands*, neither *Deere* nor *Innovation Ventures* involved a survey that tested promotional materials or legal theories the Court had already rejected as a matter of law.

Furthermore, *Deere* and *Innovation Ventures* both involved claims for trademark infringement and dilution—not claims of false or misleading advertising—and neither involved a survey similar to Dr. Befurt's survey. In these cases, the experts' surveys were meant to gauge the strength of plaintiffs' brands and the likelihood of consumer confusion from alleged infringement, thus the materials used in the surveys fit the legal theories at issue.[3] In both cases, moreover, the experts conducted their surveys orally over the telephone and did not use printed advertisements, whether from defendants, third parties, or elsewhere. *See Innovation Ventures*, 763 F.3d at 535; *Deere*, 239 F. Supp. 3d at 974-75. Neither case supports the wholesale adoption and use of a third-party advertisement in order to determine whether a defendant's

---

[3] Deere's expert telephonically surveyed salespeople of agricultural equipment to determine how they perceived the use of a "green and yellow color scheme on agricultural equipment," which Deere alleged defendant used in dilution of Deere's trademark. *Deere*, 239 F. Supp. 3d at 973-75. The survey in *Innovation Ventures*, which was meant to gauge the strength of the "5-hour ENERGY" brand, asked survey participants a series of questions over the phone regarding either "5-hour Energy" or a fictitious brand name, depending on whether they were assigned to a test group or control group. 763 F.3d at 535.

advertisements were false or misleading, especially where a court has already determined that the third-party's advertisements are not actionable or at issue in the case.[4]

Unlike Plaintiffs' cases, Dr. Befurt's expert opinions have the substantial risk of confusing and misleading the jury and unfairly prejudicing Safelite. *See* Doc. 139 at 8-10. Additionally, Dr. Befurt relied on statements in forming his expert opinions that the Court has held are not actionable, rendering his opinions a bad "fit" for this case. *Id.* at 11-14. Dr. Befurt's expert opinions and testimony should be excluded in their entirety.

## II. CONCLUSION

For the reasons articulated in Defendants' Motion to Exclude Testimony of Plaintiffs' Expert Rene Befurt Pursuant to Fed. R. Evid. 401, 403, and 702 and accompanying Memorandum in Support and those further articulated herein, the Court should grant Defendants' motion and exclude Dr. Befurt's testimony.

---

[4] To the extent that the Court finds trademark infringement cases informative here, then *Wells Fargo & Co. v. WhenU.com, Inc.* (on which the *Schechner* Court relied) is instructive. *Wells Fargo* held that plaintiff's expert's market survey lacked probative value because, among other reasons, the survey did not replicate market conditions where it failed to test defendant's ads, "did not make any attempt to replicate the respondents' experiences when encountering [defendant's] ad . . . and did not take any measures to ensure that the respondents had [defendant's] ads in mind when responding to the survey." 293 F. Supp. 2d 734, 766 (E.D. Mich. 2003).

Dated:  November 26, 2019

Respectfully submitted,

*s/ Matthew A. Kairis*

Matthew A. Kairis (Ohio Bar #0055502)
*Trial Counsel*
Tiffany D. Lipscomb-Jackson (Ohio Bar #0084382)
Kenneth M. Grose (Ohio Bar #0084305)
Shalini B. Goyal (Ohio Bar #0096743)
*(admitted pro hac vice)*
Daniel W. Berens (Ohio Bar #0097193)
E-mail:  makairis@jonesday.com,
kmgrose@jonesday.com,
tdlipscombjackson@jonesday.com,
sgoyal@jonesday.com
dberens@jonesday.com
Jones Day
325 John H. McConnell Blvd., Suite 600
Columbus, OH  43215-2673
Telephone:     (614) 281-3605
Facsimile:      (614) 461-4198

John E. Iole (Pennsylvania Bar #47768)
E-mail:  jeiole@jonesday.com
Jones Day
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Telephone:     (412) 391-3939
Facsimile:      (412) 394-7959
*(admitted pro hac vice)*

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that on November 26, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel for Plaintiffs

*s/ Matthew A. Kairis*
*One of the Attorneys for Defendants*
